UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS MARIO DASHION RANGE,

        Petitioner,

v.
                                   Case No. 25-cv-12574
                                   HON. MARK A. GOLDSMITH

BRYAN MORRISON,

        Respondent.

_____/

**OPINION & ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Thomas Mario Dashion Range, confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a pro se application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a(2). Petitioner was sentenced to seven to twenty years in prison. For the reasons that follow, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner was originally charged with first-degree home invasion and being a fourth-felony habitual offender under Mich. Comp. Laws § 769.12. He was bound over to the Wayne County Circuit Court following a preliminary examination in the 21st District Court in Garden City, Michigan. (Dkt. 11-2). Petitioner requested a new attorney at his arraignment on the information. The arraigning judge indicated that Petitioner could bring his request for new counsel up at the next pre-trial hearing before the judge to whom the case was assigned. (Dkt. 11-3, PageID.128-130).

1

At the calendar conference hearing on April 13, 2022, Petitioner requested the appointment of new counsel. The trial judge granted the request. (ECF No. 11-4, PageID.136-140).

Petitioner's new counsel, Salle Erwin, appeared at a final pre-trial conference on June 16, 2022.  Ms. Erwin stated on the record that Petitioner's sentencing guidelines were "six and a half [years]," or 78 months, on the minimum but that morning the prosecutor had offered a plea and sentencing agreement for "five years flat." That is, the minimum sentence would be capped at five years and the maximum sentence would be twenty years as per Michigan law.[1] The judge and the parties indicated that the offer expired that same day. Defense counsel asked the prosecutor to leave the plea offer open past the final pre-trial conference date but the judge indicated that the prosecutor "can draw the line in the sand anytime they want. I mean there's not much I can do about it." Defense counsel stated that she had only received the plea offer that morning and asked for the plea offer to be held open for thirty days. The judge replied, "I can give you some time but whether they keep that offer open or not is out of my hands." (Dkt. 11-6, PageID.150-152).

At another pre-trial conference conducted on August 2, 2022, defense counsel informed the judge that the prosecution's original offer of 5-to-20 years expired. Defense counsel told the judge that she had communicated that plea offer to Petitioner at the earlier pre-trial conference but he declined to accept the offer that day, although counsel told the judge she only had ten minutes to discuss the plea offer with Petitioner that day. The prosecutor was now offering to let Petitioner plead guilty to the home invasion charge with a sentence of ten to twenty years in prison with dismissal of the fourth felony habitual offender charge. Defense counsel objected to the prosecutor withdrawing the original plea offer of five to twenty years. The judge stated that he did not know

---

[1] Michigan's Sentencing Guidelines, unlike the federal sentencing guidelines, only provide for a minimum sentence; the maximum is determined by statute. See, e.g., Montes v. Trombley, 599 F.3d 490, 496 (6th Cir. 2010).

2

what the sentencing guidelines were but that a fourth-habitual enhancement on a first-degree home invasion elevated the maximum potential sentence to life imprisonment. Petitioner agreed to additional time to work out a plea deal. Defense counsel again stated that the guidelines "were six and a half years" for the home invasion charge. (Dkt. 11-7, PageID.157-161).

Three weeks later, a third offer was placed on the record: 8 to 20 years' imprisonment on the home invasion charge. The prosecutor calculated the minimum sentencing guidelines at 84 to 280 months. The trial judge noted that based on the guidelines he would instead impose a sentence of 7 to 20 years. Petitioner's counsel opined that the original offer of 5-to-20 years was "fair" and "a good offer," but that it expired too quickly. Counsel argued that it was unfair that this original plea offer had expired, claiming that Petitioner only had "a few seconds in front of this Court" to decide whether or not to accept the offer. The judge again stated that the prosecutor was not required to keep the original plea offer open past the first pre-trial conference date. The judge then gave the parties additional time to work out a plea agreement. (Dkt. 11-8, PageID.166-171).

On September 9, 2022, the parties appeared in court. Defense counsel asked the judge to enter a Cobbs agreement[2] allowing Petitioner to allow him to plead guilty with a six and a half year minimum sentence but the judge declined to do this because it would undercut the prosecutor's new offer. The prosecutor now offered to allow Petitioner to plead guilty to the first-degree home invasion charge with a sentence agreement of seven to twenty years, in exchange for dismissal of the fourth habitual offender charge. Petitioner's counsel indicated that since she still calculated the minimum guidelines at 6-and-a-half years, Petitioner wanted to know if the court

---

[2] In People v. Cobbs, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty or no-contest and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See Mich. Ct. R. 6.310(B)(2)(b); Wright v. Lafler, 247 F. App'x 701, 703, n.1 (6th Cir. 2007).

would agree to that minimum sentence. The judge responded that he thought the guidelines had been 84 to 280 months. The prosecutor explained that those would be the minimum guidelines if the value of the property Petitioner attempted to steal exceeded $1,000, otherwise the guidelines (as the prosecutor calculated them) were 78 to 260 months, which matched defense counsel's bottom calculation of 6-and-a-half years. The judge noted that the latest offer was therefore six months higher than the bottom of the guidelines and so it would not "undercut" the prosecutor's offer. (Dkt. 11-9, PageID.176-178).

Defense counsel asked Petitioner if he would accept the prosecutor's offer of 7 to 20 years. Petitioner responded affirmatively. When the judge asked the same question, though, Petitioner said, "That's not what I want to do, but that's what they offer." The judge explained to Petitioner that he did not have to accept the offer or plead guilty but could go to trial. Petitioner then indicated that he wished to plead guilty. (Id., PageID.178-179). After being advised of the rights he was waiving by pleading guilty, Petitioner pled guilty to the home invasion charge. Petitioner admitted that he "knocked on the door," that "[n]o one answered," and then he "broke the door down to steal items of value." The parties stipulated that a person was inside the home at the time of the home invasion. (Id., PageID.179-182). The judge accepted Petitioner's plea to first-degree home invasion and the sentencing agreement of 7 to 20 years and referred the case to the probation department for a pre-sentencing report.

At sentencing, Petitioner's counsel informed the court that the probation department's calculation of the guidelines came out lower than the parties' predictions and that Petitioner was "very upset about that." The pre-sentence investigator had calculated the minimum guidelines at 51-to-85 months (4 years, 3 months to 7 years, 1 month). The judge replied that although the low end of the sentencing guidelines turned out to be lower than the previous estimates by the parties,

4

the agreed-upon minimum sentence of 7 years was still within the guidelines range that had been calculated. Petitioner protested, but the trial judge sentenced Petitioner to 7 to 20 years' imprisonment, to be served consecutively to Petitioner's parole sentence. (Dkt. 11-10, PageID.187-193).

Following his conviction and sentencing, Petitioner, through appellate counsel, filed in the trial court a motion to withdraw his plea based on the guideline discrepancies discussed at sentencing, as well as a claim that trial counsel was ineffective in her calculation of the guidelines. The trial court denied the motion to withdraw the plea and for an evidentiary hearing. In so ruling, the judge indicated that the probation department's lower guidelines calculation may have been incorrect. The judge further indicated that the probation department did not score any offense variables under the sentencing guidelines, which was rather odd in a first-degree home invasion. The judge believed that defense counsel's scoring of the guidelines may very well have been more accurate. The judge also found that Petitioner had turned down the original plea offer of 5-20 years. The judge then denied Petitioner's request for a Ginther[3] hearing. (Dkt. 11-11, PageID.202-204).

Petitioner's conviction was affirmed on appeal. People v. Range, No. 367997 (Mich. Ct. App. Nov. 17, 2023); lv. den. 5 N.W.3d 348 (Mich. 2024).

Petitioner now seeks habeas relief on the following ground: the trial court abused its discretion in denying Petitioner's motion to withdraw his guilty plea and/or conduct a Ginther hearing where trial counsel was ineffective by failing to accept the 51 month offer which was on the table for one day; and ineffectively promised Defendant the minimum guideline range started at 78 months where the minimum guideline range actually scored at 51 months which induced Defendant to accept the plea and sentence deal of 78 months.

---

[3] People v. Ginther, 212 N.W.2d 922 (Mich. 1973).

## II.  LEGAL STANDARD

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-411.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection

of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal on his direct appeal in a form order "for lack of merit in the grounds presented."  The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal in a standard form order without any extended discussion.

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. Harrington, 562 U.S. at 98.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id.  In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99.  That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. Id. at 99-100. The AEDPA deferential standard of review applies where the Michigan Court of Appeals rejected Petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. See Werth v. Bell, 692 F.3d 486, 492-494 (6th Cir. 2012).

### III.  ANALYSIS

Petitioner alleges he was denied the effective assistance of trial counsel. Petitioner argues that the trial judge should have permitted him to withdraw his guilty plea or at least conduct a

Ginther hearing, on the ground that trial counsel was ineffective for failing to accept an initial plea offer of 51 months, which was only open for one day, and later by giving Petitioner faulty advice about the sentencing guidelines range which induced him to accept the guilty plea. (Dkt. 1, PageID.2, 6).

Taking Petitioner's evidentiary hearing claim first, the Court does not have the power to grant habeas relief on Petitioner's claim that the trial judge erred in denying his motion for an evidentiary hearing on his ineffective assistance of counsel claim. Whether the judge erred in denying Petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. See Hayes v. Prelesnik, 193 F. App'x 577, 584 (6th Cir. 2006).   Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. Id. at 585.  Accordingly, Petitioner would not be entitled to habeas relief on this portion of his claim.

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id.  Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there

8

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694.

The Supreme Court has found that:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

Premo v. Moore, 562 U.S. 115, 124-125 (2011).

The Supreme Court further admonished:

> These considerations make strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude Strickland requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. Strickland allows a defendant "to escape rules of waiver and forfeiture[.]" Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of Strickland. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's

> decisions while failing to accord the latitude <u>Strickland</u> mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

<u>Premo</u>, 562 U.S. at 125 (internal citations and quotations omitted).

The Sixth Circuit found that: "Although the negotiation of a plea bargain is a critical stage in the prosecution to which the right to effective assistance of counsel attaches, the duties and responsibilities of defense counsel in the plea bargain process have not been specifically defined." <u>McGowan v. Burt</u>, 788 F.3d 510, 515 (6th Cir. 2015).

Petitioner argues that trial counsel was ineffective for failing to accept an initial offer of a minimum sentence of 51 months which expired the same day that it was offered. The Court assumes that Petitioner is referring to the plea offer of five to twenty years in prison on the home invasion charge, which was made on June 16, 2022, but which the prosecutor indicated would expire that day if Petitioner did not accept the offer.

Where a defendant alleges that an earlier favorable plea offer lapsed due to the ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that, but for that deficient performance: (1) the defendant would have accepted the earlier plea offer had he been afforded effective assistance of counsel; (2) the plea would have been entered without the prosecution canceling it if the prosecution had the authority to exercise that discretion under state law; (3) the plea would have been entered without the trial court refusing to accept it if the trial court had the authority to exercise that discretion under state law; and (4) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. <u>Maslonka v. Hoffner</u>, 900 F.3d 269, 281 (6th Cir. 2018) (quoting <u>Missouri v. Frye</u>, 566 U.S. 134, 147 (2012)).

10

Petitioner is not entitled to habeas relief on this portion of his claim because he has not shown a reasonable probability that he would have accepted this earlier plea offer. Maslonka, 900 F.3d at 282. Defense counsel indicated at the pre-trial conference hearing on August 2, 2022, that she had communicated the plea offer of 5-20 years to Petitioner but he declined to accept it. In denying Petitioner's motion to withdraw the plea and/or for an evidentiary hearing, the judge also found that Petitioner rejected this offer.

Petitioner is also not entitled to relief on this portion of the claim because he failed to show that the prosecutor would not have cancelled the offer. Id. The prosecutor indicated that this offer would remain open only for that day. Trial counsel, in fact, at the pre-trial conference on June 16, 2022, asked the court and the prosecutor to extend the plea offer but the judge indicated he had no power to order the prosecutor to do so. At subsequent hearings, trial counsel objected to the original plea offer of 5-20 years being canceled after the first pre-trial conference as well. There is, however, no constitutional right to a plea bargain. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977).  Neither the trial judge nor defense counsel had the power to order the prosecutor to extend the original plea offer past the June 16, 2022, pre-trial conference. Nor did defense counsel have the authority to accept this plea offer if Petitioner declined to accept the offer. Although a state may choose to preclude the prosecution from withdrawing a plea offer once it has been accepted or to preclude a trial court from rejecting a plea bargain, this is not required by the Sixth Amendment. See Frye, 566 U.S. at 150–151. Because counsel "had little, if any, power to restrain the prosecutor from exercising its unilateral authority to withdraw a plea offer[,]" counsel was not ineffective in failing to secure an extension of the first plea offer. See Love v. United States, 949 F.3d 406, 411 (8th Cir. 2020). Petitioner is not entitled to habeas relief on this portion of his claim.

Petitioner also alleges that trial counsel misestimated the scoring of the guidelines range, leading Petitioner to believe that the lowest part of the sentencing guidelines range was 78 months, whereas the actual guidelines, as scored by the probation department, was 51 to 85 months. Petitioner claims that had he known that the sentencing guidelines range was lower, he would not have accepted the plea agreement which included a sentence of 7-20 years.

As an initial matter, it is unclear whether defense counsel mis-scored the sentencing guidelines range. As the judge indicated in denying the motion to withdraw the guilty plea, the pre-sentence investigator failed to score any offense variables when determining Petitioner's sentencing guidelines range of 51-85 months, which the judge called unusual. It is very possible that the sentencing guidelines were higher and had been correctly scored by counsel.

Even if defense counsel misestimated the sentencing guidelines, Petitioner would not be entitled to habeas relief on his ineffective assistance of counsel claim. As the Sixth Circuit recently put it, "[b]aseline competence under the Sixth Amendment does not require clairvoyance." Pouncy v. Palmer, No. 21-1811, 2025 WL 1341850, at *8 (6th Cir. May 8, 2025). Indeed, "[p]redicting a guidelines range is often 'more art than science.'" Id. at *7 (quoting United States v. Anonymous Defendant, 629 F.3d 68, 78 (1st Cir. 2010)). "Even the most competent attorney . . . can underestimate a defendant's exposure by considerable margins." Id. at *8. Moreover, when it comes to a habeas court reviewing a claim that trial counsel was ineffective for misestimating the applicable guidelines range, it is error for a federal district court to "focus[ ] on the inaccuracy of [the petitioner's] counsel's guidelines estimate, rather than the adequacy of the state court's assessment of [the petitioner's] claim." McGowan, 788 F.3d at 516. The mere fact that there was a discrepancy between the minimum guidelines range counsel estimated and the range that was later calculated as part of the pre-sentence investigation report does not establish a constitutional

deficiency on counsel's part. See Pouncy, 2025 WL 1341850, at *8 ("the gap between the plea-level predictions as to a minimum sentence and the final sentence does not establish deficiency by itself . . . ."). Therefore, the Michigan Court of Appeals' rejection of this claim—the focus on habeas review—was entirely reasonable. As in Pouncy, "it was plain that the prosecutor, counsel, and judge were all talking predictions." Id., 2025 WL 1341850, at *8. The prosecutor, in fact, agreed with defense counsel that the low end of Petitioner's guidelines range was 78 months. Counsel could not be deficient in her calculation of the sentencing guidelines when the prosecutor concurred in that calculation. See Mercer v. Stewart, 600 F. Supp. 3d 725, 774–775 (E.D. Mich. 2022) (denying an ineffective-assistance claim where "all of the key non-party participants in the trial – i.e., all of the lawyers and the judge – were responsible for the erroneous references to the duress defense.") (emphasis in original)); aff'd in part, rev'd in part on other grds, 171 F.4th 897 (6th Cir. 2026).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, but would have insisted on going to trial. Premo v, Moore, 562 U.S. 115, 129 (2011) (citing Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill, 474 U.S. at 59. The Sixth Circuit has interpreted Hill to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, a petitioner would likely have gone to trial instead of pleading guilty. See Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty,

because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. See Garrison v. Elo, 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he would not have pleaded guilty is insufficient to prove such a claim. Id.  The test of whether a defendant would have not pleaded guilty if he had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Pilla v. U.S., 668 F.3d 368, 373 (6th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, because he failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. See Shanks v. Wolfenbarger, 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005). Petitioner was originally charged with being a fourth felony habitual offender, which raised his maximum sentence to life in prison. Mich. Comp. Laws § 769.12(1)(b).  In exchange for Petitioner's plea to the first-degree home invasion, which carries a maximum twenty-year prison term, the prosecutor agreed to dismiss the habitual offender charge. The prosecutor also agreed that Petitioner would receive a sentence of 7 to 20 years.  Moreover, the evidence against Petitioner was overwhelming. Petitioner was caught inside of the victim's house by the police; he does not identify any viable defense he had to the charge.

The favorable plea bargain that Petitioner received also weighs against a finding that counsel was ineffective for advising a guilty plea. See Plumaj v. Booker, 629 F. App'x 662, 667 (6th Cir. 2015) (citing Pilla, 668 F.3d at 373; Haddad v. United States, 486 F. App'x 517, 522 (6th Cir. 2012)).  Indeed, "the Supreme Court has never held that the benefits of a plea agreement alone

cannot suffice to answer the prejudice inquiry, namely whether 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting Hill v. Lockhart, 474 U.S. at 59).   Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000).  A petitioner satisfies this standard by demonstrating that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

15

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if Petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id.

## V. ORDER

Accordingly, it is ordered that the petition for a writ of habeas corpus is denied. A certificate of appealability is denied. The Court will grant Petitioner leave to appeal in forma pauperis.

**SO ORDERED.**

Dated: June 12, 2026  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 12, 2026.

s/Joseph Heacox

JOSEPH HEACOX
Case Manager
